IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13CV134-GCM

| | |
|---|---|
| HANNAH FAYE TUTTLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| ANUVIA PREVENTION & RECOVERY ) | |
| JO-ELLEN MCQUADE, LARRY SNIDER, ) | |
| PATRICIA SMITH and KIMBERLEY ) | |
| ANTHONY-BYNG, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court upon the Defendants' Motions to Dismiss [Doc. Nos. 4 and 6] Plaintiff's Complaint. The *pro se* Plaintiff has filed a response in opposition to each motion [Doc. Nos. 9 and 10]. The matter is now ripe for disposition.

### I.   FACTUAL BACKGROUND

Plaintiff, Hannah Faye Tuttle, initiated this action by filing a *pro se* Complaint on March 1, 2013. [Doc. No. 1]. Plaintiff's form Complaint includes eight single-spaced pages of factual allegations and nineteen exhibits. Plaintiff named her employer Anuvia as well as individual Anuvia employees, Jo-Ellen McQuade, Larry Snider, Patricia Smith, and Kimberly Anthony-Byng,[1] alleging violations of Title VII of the Civil Rights Act of 1964and the Americans with Disabilities Act (ADA) as well as state law defamation.[2]

---

[1] Incorrectly identified as "Kimberley" Anthony-Bing in Plaintiff's Complaint. [Doc. No. 1].
[2] Plaintiff's Complaint also includes a Count alleging retaliation as to Defendant Anuvia. However, Defendant has not moved for the dismissal of Counts 1 and 4 at this time.

1

## II. LEGAL STANDARD

### A. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. In determining whether subject matter jurisdiction exists, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co., v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted). When reviewing a motion to dismiss pursuant to Rule 12(b)(1), "[t]he district court should apply the legal standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material facts exists," *Id.* (citations omitted). This, when a court considers its subject matter jurisdiction, the burden of proof is on the plaintiff. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

### B. 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When deciding a 12(b)(6) motion to dismiss, a court must "accept as true all factual allegations" presented in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 589 (2007). In order to survive a 12(b)(6) motion to dismiss, the plaintiff's complaint must contain more than mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." *Twombly*, 550 U.S. at 570. The claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the

misconduct." *Iqbal*, 556 U.S. at 678. Thus, if a complaint establishes a sufficient legal and factual basis for the claims asserted the motion to dismiss will be denied.

The Fourth Circuit requires district courts to construe *pro se* complaints liberally to ensure that valid claims do not fail merely for lack of legal specificity. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Ensuring that form does not trump substance also requires courts to "look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff" to determine whether a *pro se* plaintiff can survive a motion to dismiss. *Garrett v. Elko*, 1997 WL 457667, at *1 (4th Cir. 1997) (per curiam) (referencing *Gordon*, 574 F.2d at 1149-1151). However, this liberal construction need not extend to outright advocacy for the *pro se* plaintiff. *Gordon*, 574 F.2d at 1151. *Pro se* plaintiffs, with the assistance of the district court's lenient eye, must still do more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted).

### III. ANALYSIS

**A. Jurisdiction Over Individual Defendants**

Under well-settled precedent, this Court lacks subject matter jurisdiction over Defendants Jo-Ellen McQuade, Larry Snider, Patricia Smith and Kimberly Anthony-Byng in their individual capacities because Title VII and ADA claims do not permit individual liability for employment discrimination. *See Jones v. Sternheimer*, 387 Fed. App's 366 (4th Cir. 2010) (stating that Title VII and the ADA "do not provide for causes of action against defendants in their individual capacities"); *Lane v. Lucent Technologies, Inc.,* 388 F. Supp 2d 590 (*M*.D.N.C. 2005); *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990) ("holding that Title VII's employer liability is similar to the ADEA's in that individuals acting as an employer's "agents" are liable in that individuals in their official capacities only,"). Accordingly, Plaintiff's Title VII and ADA claims

against the individual Defendants are dismissed.

## B. Exhaustion of Administrative Remedies

Next, the individual Defendants argue that Plaintiff's EEOC Charge failed to name them, therefore the Court lacks subject matter jurisdiction over these parties.

Before a plaintiff may file a Title VII or ADA claim, she must first file an administrative charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (stating charge-filing requirement for Title VII claims); 42 U.S.C. § 12117(a) (incorporating and applying Title VII's procedural requirements to ADA claims). This requirement is more than a procedural bar. The Fourth Circuit has clarified that a plaintiff's failure to file a charge with the EEOC and to exhaust the EEOC's administrative process "deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvery Group, Ltd,* 551 F.3d 297, 300 (4th Cir. 2009). Indeed, courts in the Fourth Circuit have dismissed claims under Title VII and the ADA against individuals who were not named as respondents in the charge of discrimination. *See, e.g., Causey v. Balog*, 162 F.3d 795, 800-02 (4th Cir. 1998); *McDaniel v. Greyhound Lines, Inc.,* 2008 WL 2704774 at *2 (W.D.N.C. July 7, 2008) (dismissing plaintiff's Title VII action against individual defendants not named in plaintiff's EEOC charge); *Monroe v. BellSouth Telecomms., Inc., 2003 WL 22037720 at *3 (M.D.N.C.* Aug. 15, 2003) (dismissing pro se plaintiff's ADA claims against defendants not named in plaintiff's EEOC charge*).*

Here, Defendants McQuade, Snider, Smith and Anthony-Byng were not named as respondents in Plaintiff's EEOC charge. Instead, the only respondent named by Plaintiff is "Anuvia "Prevention & Recovery Center." Although the Defendants McQuade, Snider and Smith are referenced in the "particulars" section of Plaintiff's charge, this is not sufficient to exhaust Plaintiff's administrative remedies with respect to these individuals as required by Title

4

VII or the ADA. *See Miller v. Ingles,* 2009 WL 4325218 at *9 (W.D.N.C.) (dismissing *pro se* plaintiff's claims under federal anti-discrimination laws for lack of subject matter jurisdiction where individuals were named in "particulars" of the charge, but not as respondents).

Plaintiff does not deny that her EEOC charge failed to name Defendants McQuade, Snider, Smith or Anthony-Byng. Rather she argues that she exhausted her administrative remedies with respect to the individual Defendants because Defendant McQuade and Snider (1) "were privy to all EEOC filings"; (2) attended EEOC mediation; (3) "knew of all facts associated with the case"; and (4) "responded to the EEOC." [Doc. No. 9 at 3-4].

The Fourth Circuit has explained that the purpose of the naming requirement is to put a party on notice of a complaint. *Causey*, 162 F.3d at 800. Here, the fact that some of the Defendants may have had knowledge of Plaintiff's EEOC charge against the company does not put them on notice that they could be personally liable for the alleged violations. Therefore, Plaintiff's Title VII and ADA claims are also dismissed for lack of subject matter jurisdiction due to her failure to exhaust her administrative remedies with respect to the individual Defendants.

**C. Defamation Claim**

Defendants contend that Plaintiff's state law defamation cause of action should be dismissed because Plaintiff has failed to allege sufficient facts to state a claim for relief. Plaintiff alleges that on the day of her termination, she was waiting in the hallway when two clients asked "what going on" (sic) [Doc. No. 1 at 8]. Plaintiff contends that Defendant Anthony-Byng "loudly turned to the executive director's office and said, 'she's out there speaking to clients, she can't do that.'" [*Id.*]

To state a claim for defamation, a plaintiff must allege "the defendant made a false and

defamatory statement of or concerning the plaintiff, which was published to a third person and caused injury to the plaintiff's reputation." *Esancy v.* Quinn, 2006 WL 322607 at *3 (W.D.N.C.) (citations omitted). Because the statement at issue was oral and not written, the Court will construe Plaintiff's defamation claims as slander. *Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc.,* 2008 WL 4005738 at *4 (M.D.N.C.).

With respect to the allegedly defamatory statement, there is no allegation that Defendant Anthony-Byng's statement was published to any third party beyond Plaintiff's conclusory allegation that such statement was made "in front" of her clients. [Complaint at 11]. *See Lee v. AT&T Mobility Servs. LLC,* 2013 WL 1246747 at *8 (noting that statement "which was made loudly in defendant's office" with "some possibility it could have been overheard by unnamed passers-by was not 'competent evidence from which the jury might find that there was a publication of the alleged slanderous words.'"). Moreover, there is no allegation that Defendant Anthony-Byng's statement was false. *Thomas v. Fulton*, 2007 WL 4365660 at *2 (W.D.N.C.) (finding plaintiff failed "to meet the standards of defamation" where, *inter alia*, he did not allege statements were false). Indeed, even in her response, Plaintiff does not allege that the statement was false. Publication and falsity are essential to establishing a defamation claim. Neither is sufficiently alleged here.

Next, even assuming Plaintiff has sufficiently alleged publication and falsity, the claim still fails. When a plaintiff alleges that the defamation was oral, "the allegations in the complaint must be sufficient to satisfy the elements of either slander per se or slander per quod." *Elina Adoption Services*, 2008 WL 40057 at *4. The Court has reviewed the oral statements at issue and has determined they do not meet the definition of slander per se. *Moore v. Cox*, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004). "Slander per quod involves a spoken statement of which the

6

harmful character does not appear on its face as a matter of general acceptance, but rather becomes clear "only in consequence of extrinsic, explanatory facts showing its injurious effect . . . ." *Donovan v. Fiumara*, 114 N.C. App. 524, 527 (1994) (*quoting Badame v. Lampke*, 242 N.C. 755, 757 (1955)). In her response to the Motion to Dismiss, Plaintiff makes clear that her defamation claim relies on explanatory circumstances and is thus, per quod. Slander per quod requires the same elements of defamation per se, but further requires that a party plead special damages and malice. *Lee v. AT & T mobility Servs.LLC*, 2013 WL 1246747 at *7-8 (E.D.N.C.) (citations omitted).

With respect to malice, Plaintiff's Complaint, does not contain facts supporting such an allegation. *See Beane v. Weiman Co.*, 5 N.C. App. 276, 277 (1969) (*citing* Strong's North Carolina Index 2d Libel and Slander) ("the false utterance may be such as to sustain an action only when causing some special damage (per quod), in which case the malice and the special damage must be alleged and proved). Although Plaintiff states in her response that Ms. Anthony- Byng's statement was intended to be "malicious," Plaintiff is bound by the allegations in her Complaint and cannot survive dismissal through allegations raised for the first time in her response. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, Plaintiff's Complaint does not contain allegations specifically setting forth special damages or alleging that any such damage has resulted from Ms. Anthony-Byng's alleged statement. A review of Plaintiff's Complaint reveals only a single allegation of any type of harm attributed to Ms. Anthony-Byng's purported statement. Specifically, Plaintiff states that she "imagines" the statement, combined with her termination, "left a less than favorable impression" of Plaintiff and that Anuvia's "treatment" of her "has instilled fear that [her] career

7

and reputation has been severely damages." [Doc. No. 1 at 11].[3] This allegation falls short of the requirement to set forth actual, special damages to Plaintiff's profession for meeting the requirements of a per quod action. *Johnson*, 86 N.C. App at 12 (explaining that, at a minimum, plaintiff must allege some damage to his trade or business to avoid dismissal).

In short, Plaintiff has failed to sufficiently plead a claim for defamation as to Defendant Anthony-Byng. Plaintiff has pled no defamation claim as to Defendants McQuade, Snider and Smith.[4] Because Defendant Anuiva's liability for a defamatory statement made by an employee depends on the underlying liability of the accused employee and because Plaintiff has not stated a claim for defamation against any individual employee, Plaintiff's defamation claim against Defendant Anuvia will also be dismissed. *See Poole v. Copland, Inc.,* 481 S.E.2d 88, 95 (N.C. App. 1997) ("When an employer's liability is solely derivative under a theory of vicarious liability, such a respondeat superior or ratification, the liability of the employer cannot exceed the liability of the employee."), *rev'd on other grounds*, 498 S.E.2d 602 (N.C. 1998).

**D. ADA Count as To Defendant Anuvia**

Plaintiff alleges a claim for disability discrimination. In Support of her ADA claim Plaintiff alleges that at an unidentified time, her supervisor, Defendant Smith, asked if Plaintiff's "anxiety disorder got in the way of educations"[5] and that, at another unspecified time, Defendant

---

[3] Although Plaintiff's alleges that Anuvia's "negligence, malice, blatant disregard for policy and discriminatory practice and ultimate retaliation has left her in a position of severe distress both emotionally and financially, and has severely damaged [her] career," there is no allegation that Plaintiff suffered any pecuniary injury as a specific result of Ms. Anthony-Byng's statement. [Doc. No. 1 at 12].
[4] In Plaintiff's response to Anuvia's motion, she states that she bases her defamation claim on an alleged statement by Ms. Smith that Plaintiff violated HIPAA. [Doc. No. 10 at 5]. Plaintiff asserts that Ms. Smith told Ms. McQuade and Ms. Anthony-Byng that Plaintiff violated HIPAA. Even if true, such statement does not given rise to defamation under North Carolina law. *Reikowski v. Int"l Innovation Co.,* 2013 W: 526489 at *3 (W.D.N.C.) (statement made by an employee of a company to another employee of the same company is not considered published to a third party)
[5] An "education" was a part of Plaintiff's job duties in meeting with clients at Anuvia. [Doc. No 1 at 5].

Smith stated in reference to Plaintiff: "I feel like I'm talking to a client right now."[6] [Doc. No. 1 at 6].

To establish a prima face case of ADA discrimination, a plaintiff must show: "(1) she is within the ADA's protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination." *Gray v. Walmart Stores, Inc.*, 2011 WL 4368415 at *4 (E.D.N.C.). In an ADA termination case, a plaintiff must establish that her employment was terminated "because of her disability." *EEOC v. Stowe-Pharr Mill Inc.*, 216 F.3d 373, 377 (4th Cir. 2000).

The Court notes that outside of the alleged comments by Defendant Smith, Plaintiff does not state that she believes any adverse action was taken against her because of any purported disability. Instead, Plaintiff specifically alleges that "[t]here is no double in [my] mind if I were a male employee or I had not reported my supervisor . . . I would still be employed there." [Doc. No. 1 at 12]. In the absence of any allegations that action was taken against the Plaintiff because of her disability, and in view of her affirmative statement that her adverse employment action was due to reasons unrelated to her disability, the Court concludes that Plaintiff has failed to state a claim for relief under the ADA and that her ADA claim is therefore dismissed.

### E. Harassment/Hostile Working Environment Count as to Anuvia

In count three of her Complaint, Plaintiff alleges a claim for hostile work environment/harassment. [Doc. No. 1 at 6]. In support of her claim, Plaintiff cites the following incidents"

---

[6] Plaintiff explains that their clients "were severally mentally ill as well as chemically dependent." [Doc. No. 1 at 6].

- "On February 23, 2012, I was called into the executive director's (Larry Snider) office. At this time I was questioned as to whether I called Kristen [a coworker] a bitch in December . . . I was extremely upset and said I felt as if my character was being attacked."
- "On April 16, 2012, I was accused of getting information from Dionysios [a coworker] . . . . Pat [plaintiff's supervisor] continued accusing me of not doing work for the education until I finally pulled up the educations . . . . I asked her, as I had in the past, what specifically she was expecting of me . . . . and she replied 'there's nothing you can do, you're not good at this, it isn't for you' and then stated she wanted me to be more like Rick and Dionysios but that wouldn't happen. She left my office and I was very upset."
- "I was starting to be treated differently by my peers. Rick always copied and gave us a duplicate of our client sign in sheets, he stopped giving one to me and continued delivering the rest of the team theirs.
- "On another occasion during lunch with the clients, I was informed by Pat and Yvonne that I should attend Alcoholics Anonymous meetings, on my own time, because I was expecting the clients to go and so I needed to experience what they do. To my knowledge no other staff member was asked to do this."

[Doc. No. 1 at 6-7].

Taking all of Plaintiff's factual allegations as true, Plaintiff cannot state a claim for relief for hostile work environment or sexual harassment. To begin, none of Plaintiff's allegations establish any conduct related to or based upon Plaintiff's gender. Indeed, the incidents Plaintiff cites in her Complaint include incidents with various

supervisors and coworkers, both male and female, which bear no discernible relation to Plaintiff's gender. *See Bass v. E.O. DuPont de Nemours & Co.,* 324 F.3d at 765 (Plaintiff's "complaint is full of problems she experienced with her co-workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment."); *Evans v. East Carolina University*, 2008 WL 4772197 at *2 (E.D.N.C.) (finding that plaintiff's "accounting of the problems he encountered with his coworkers and supervisors" did "not have anything to do with" his gender or race)' *Averette v. Diasorin, Inc.,* 2011 WL 3667218 at *3 (W.D.N.C.) (stating "all of Plaintiff's allegations of 'harassment' do nothing more than establish that she did not get along with her co-workers, not that the Defendant or anyone else harbored any sort of discriminatory animus . . .").

Next, even if Plaintiff's had made allegations sufficient to connect the incidents described in her Complaint to her gender, none of the alleged conduct is so severe or pervasive as to have altered the conditions of her employment or to have created an abusive atmosphere. The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). In this vein, it is well established that "[c]omplaints premised on nothing more than 'rude treatment by [coworkers],'" *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cit. 2006), 'callous behavior by [one's] superiors,' *Bass*, 324 F.3d at 765, or a 'routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000), are not actionable under Title VII." *Harrison v. Se Radiology, P.A.,* 2013 WL 633584 at *3 (M.D.N.C.).

Given this standard, Plaintiff does not state a plausible claim for relief on a hostile

work environment theory as the incidents she describes in her Complaint are not "the type of severe or pervasive gender … based activities necessary to state a hostile work environment claim." *Bass*, 324 F.3d at 764; s*ee also Knotts v. Univ. of N. Carolina at Charlotte*, 2011 WL 650493 at *6-8 (W.D.N.C.) (granting motion to dismiss plaintiff's hostile work environment claim where plaintiff alleged "two incidents where she was subjectively offended by a statement of a co-worker or supervisor" and alleged "she was reassigned duties, required to work alone, and that her supervisor observed her while she worked."). The Court has reviewed Plaintiff's Complaint and concludes that Plaintiff has failed to establish a hostile work environment claim and therefore Plaintiff's third count will be dismissed.

## IV. ORDER

For the reasons stated herein, it is ORDERED that:

(1) Defendants' Motion to Dismiss [Doc. No. 4] Plaintiff's Complaint is GRANTED;

(2) Defendants McQuade, Snider, Smith and Anthony-Byng are DISMISSED;

(3) Defendant Anuvia Prevention and Recovery Center, Inc., Partial Motion to Dismiss Plaintiff's Complaint [Doc. No. 6] is GRANTED;

(4) Counts Two (ADA), Three (harassment/hostile working environment) and Five (defamation) claims are DISMISSED.

(5) Counts One and Four of Plaintiff's Complaint remain a part of this action with respect to Defendant Anuvia.

**SO ORDERED**.

Signed: July 29, 2013

Graham C. Mullen
United States District Judge